DREW, J.
|, The employer appeals a district court judgment reversing an administrative agency’s determination that the employee was disqualified from unemployment compensation (“UI”) benefits.
We reverse the district court judgment and reinstate the Board of Review’s determination of disqualification.
FACTS
Veocho Cornelious began working as a CNA at Heritage Nursing Center (“Heritage”) in Haynesville, Louisiana, in April of 2010. Her schedule required her to work for four consecutive days followed by two days off. Cornelious was working her shift on April 17, 2012, when she left her work early at 2:30 a.m. to check on her horse, which had run onto a highway. She did not return to work to finish that shift. Cornelious was not scheduled to work on April 18 or 19, but was to work the 10:00 p.m. to 6:00 a.m. shift on April 20.
At approximately 8:30 p.m. on April 20, Cornelious received a call from a hospice in Michigan informing her that her father was dying. Cornelious called the nurse’s station to notify them that she would be absent from work, but let the phone ring only three to four times before she hung up without leaving a message. Cornelious left for Michigan.
Arlene Martin was the Director of Nursing at Heritage. She terminated Cornelious in writing on April 25. When completing a separation notice alleging disqualification from UI benefits, Martin wrote that Cornelious “quit to go and see about her horse. [H]as never come back.” Cornelious did not return to the nursing home until May 2.
| ¡.Cornelious sought UI benefits. The Louisiana Workforce Commission determined that Cornelious was disqualified from benefits because she left her job without good cause attributable to a substantial change made to the employment by the employer.
Cornelious appealed the finding to an ALJ. After hearing testimony from Corne-lious and Martin, and reviewing submitted documents, the ALJ made factual findings including that: (i) Cornelious was scheduled to work April 20, 2012; however, she had to take an emergency trip to Michigan to see her dying father; (ii) her employer required its employees to call their supervisor in the event of an absence, and Cor-nelious was aware of the procedure; (iii) Cornelious did not notify her employer of her absence, but instead relied on the Michigan hospice personnel to notify her employer days after her absence; (iv) Cor-nelious did not attempt to return to work until May 2; and (v) Cornelious was discharged from her employment because of *17 absenteeism without notification to her employer.
The ALJ concluded that Cornelious was expected to notify her employer of the reason for her absence as soon as it was feasible to do so, and regardless of how valid the reason for her absence was, her failure to do so was misconduct connected with the employment. Therefore, Cornelious’s failure to notify her employer of her absence resulted in a discharge for misconduct connected with her employment and she was disqualified for benefits under La. R.S. 28:1601(2).[1]
| ¡¡Cornelious appealed to the Board of Review, which found that the parties had been afforded due process, that the facts found by the ALJ were based on a preponderance of the evidence as a matter of law, and that the standards of relevance, admissibility, credibility, and weight of evidence were properly applied to the case record. The Board of Review adopted the ALJ’s findings of fact and conclusions of law, and affirmed the ALJ’s decision.
Cornelious sued for judicial review. The district court reversed the Board of Review and concluded that Cornelious had established her right to receive UI benefits. In its written reasons for judgment, the district court acknowledged that its review was limited to determining if the findings of fact were supported by sufficient, legal, and competent evidence as a matter of law, and whether, based on those findings, the Board of Review’s legal conclusions were correct as a matter of law. The district court noted that the federal Family and Medical Leave Act (“FMLA”) had primacy over the nursing home’s policy handbook, and nothing indicated the “agency” gave any weight to the FMLA. The district court further noted that the agency ignored the “obviously incorrect” statement by Heritage that Cornelious was terminated because she left her shift early to see about a horse. After noting that workers at the hospice claimed they made many attempts to contact Heritage about the reason for Cornelious’s absences, the district court concluded there was no indication that the agency considered the availability of an exception to Heritage’s call-in policy or the hospice’s many attempts to notify Heritage.
14 The district court deemed the agency’s decision to be neither factually supported by sufficient, legal competent evidence nor legally correct. Therefore, it ruled that the termination was not for good cause connected with Cornelious’s employment. Heritage appealed.
DISCUSSION
Judicial review in UI proceedings is limited by La. R.S. 23:1634(B), which provides that “the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law.” See Lafitte v. Rutherford House, Inc., 40,395 (La.App.2d Cir.12/14/05), 917 So.2d 684.
Regarding the payment of unemployment benefits, La. R.S. 23:1601 provides:
An individual shall be disqualified for benefits:
[[Image here]]
(2)(a) If the administrator finds that he has been discharged by a base period or subsequent employer for misconduct connected with his employment. Misconduct means mismanagement of a po *18 sition of employment by action or inaction, neglect that places in jeopardy the lives or property of others, dishonesty, wrongdoing, violation of a law, or violation of a policy or rule adopted to insure orderly work or the safety of others. Such disqualification shall continue until such time as the claimant can requalify by demonstrating that he:
(1) Has been paid wages for work subject to the Louisiana Employment Security Law or to the unemployment insurance laws of any other state or of the United States equivalent to at least ten times his weekly benefit amount following the week in which the disqualifying separation occurred.
(ii) Has not left his last work under disqualifying circumstances.
The employer bears the burden of proving by a preponderance of the evidence that the discharge resulted from disqualifying misconduct. Banks ┴5v. Administrator, Dept. of Employment Sec. of State of La., 393 So.2d 696 (La.1981); Dyer v. Nursecall Nursing & Rehabilitation/Irving Place Associates, LLC, 47,927 (La.App.2d Cir.5/8/13), 2013 WL 1890717, — So.3d-.
This court has concluded that the legislative definition of “misconduct” in UI matters requires either intentional wrongdoing or negligence to such an extent as to manifest culpability or a showing of intentional and substantial disregard of the employer’s interest. Lafitte, supra. An unexcused absence from work, and a failure to timely notify the employer, can be disqualifying misconduct if a wrongful intent is established. Id.
The handbook given to Heritage’s employees set forth the procedures the employees were to follow when giving notice of a work absence:
CALL INS
In order to assure that we maintain the appropriate staffing patterns to provide quality care to our residents, we require that all employees notify the facility when they are not going to be able to attend regularly scheduled work times.
1. Notify Supervisor, or designated individual, if unable to work at least two hours before scheduled shift is to begin.
2. Failure to notify will be considered a “no-call, no show,” will be considered as a voluntary termination.
3. Friends or family members are not to make notification.
4. Exceptions are allowed, i.e., accident, family emergency, and death in family, etc. However, each exception will be reviewed on an individual basis. Supportive documentation may be required.
5. Excused absences will require either a physician’s statement or other substantiating documentation explaining your inability to report to or complete scheduled shift.
6. Supervisor will monitor all absences, attendance records are always primary consideration in evaluating | ¿performance for the purpose of wages and salary increases, promotions, and transfer.
Martin explained that when employees will miss work, they are supposed to call her, and she will take their calls 24 hours a day. She knew Cornelious was aware of this policy because Cornelious had called her in the past when she was going to be absent. Martin also knew that Cornelious received the employee handbook because she signed a paper acknowledging that she received it.
Cornelious offered a different procedure that she was to follow when giving notice that she would miss work. She said she *19 was not required to call Martin, but only needed to call the nursing center and leave a message. Nevertheless, she did not even comply with the procedure she thought was proper as she hung up after only a few rings and never left a message.
Cornelious relied on the hospice to notify Heritage of her absence after she failed to do this on her own. She stated that a nurse from the hospice told her to leave for Michigan and the nurse would request emergency leave of absence paperwork for her. She added that the nurse assured her that she had emergency leave of absence. Cornelious never tried to call the nursing station again because she said she was not in the right state of mind.
Cornelious also explained that she knew it was important that she contact Heritage, but a social worker at the hospice told her on April 23 not to be concerned about it and that the social worker would take care of the leave time. Cornelious still never called the nursing home on her own even after she learned that the social worker called the nursing home and was told 17by “Hattie” on April 23 that there was no need to request paperwork for an emergency medical leave of absence because Cornelious had already been fired.
A social worker from the hospice sent a letter dated May 1, 2012, to a Ms. Loe at Heritage. The social worker stated that a hospice nurse had contacted Cornelious to alert her about her father’s condition and that she had to leave for Michigan immediately if she wanted to see her father before he died. She wrote that the nurse called Heritage three times to leave messages, and on one occasion tried to leave a message with an employee who indicated that she could not take the message. The social worker also wrote that she called the nursing home three times and left messages, including one time with Loe’s assistant, Candy Hicks, but she never received a return call.
Martin denied that she received any word from Cornelious or from the hospice that Cornelious had to leave to see her father in Michigan. Martin also denied knowing any employee named Candy Hicks. Martin said she did not know about the death of Cornelious’s father until she received the paperwork for the hearing.
The statement given by Heritage as the reason for the termination was not “obviously incorrect” as found by the district court. The court apparently focused on the first part of the statement and ignored the part that Cornelious never came back to work. Cornelious was not fired because she left her shift early to see about a horse. In fact, according to Cornelious, she had permission from her supervisor, Valerie Brown, to leave to check on her | ahorse. What led to her termination was her failure to notify Martin, or anyone else at Heritage, when she did not show up for her April 20 shift, or for shifts that followed.
The ALJ’s determination (adopted by the Board of Review) that Cornelious’s failure to notify her employer of her absences resulted in a discharge for misconduct connected with her employment was supported by sufficient evidence and was conclusive. As a matter of law, the facts justified the disqualification of Cornelious from benefits. Accordingly, the district court erred in reversing the determination made by the ALJ and affirmed by the Board of Review.
Any reliance by the trial court on the FMLA was misplaced. 29 CFR § 825.303 (Employee notice requirements for unforeseeable FMLA leave), states, in part:
(a) Timing of notice. When the approximate timing of the need for leave is not foreseeable, an employee must provide notice to the employer as soon as practi *20 cable under the facts and circumstances of the particular case. It generally should be practicable for the employee to provide notice of leave that is unforeseeable within the time prescribed by the employer’s usual and customary notice requirements applicable to such leave. See § 825.808(c). Notice may be given by the employee’s spokesperson (e.g., spouse, adult family member, or other responsible party) if the employee is unable to do so personally. For example, if an employee’s child has a severe asthma attack and the employee takes the child to the emergency room, the employee would not be required to leave his or her child in order to report the absence while the child is receiving emergency treatment. However, if the child’s asthma attack required only the use of an inhaler at home followed by a period of rest, the employee would be expected to call the employer promptly after ensuring the child has used the inhaler.
[[Image here]]
(c) Complying with employer policy. When the need for leave is not foreseeable, an employee must comply with the 13employer’s usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances. For example, an employer may require employees to call a designated number or a specific individual to request leave. However, if an employee requires emergency medical treatment, he or she would not be required to follow the call-in procedure until his or her condition is stabilized and he or she has access to, and is able to use, a phone. Similarly, in the case of an emergency requiring leave because of a FMLA-qualifying reason, written advance notice pursuant to an employer’s internal rules and procedures may not be required when FMLA leave is involved. If an employee does not comply with the employer’s usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied.
Cornelious did not comply with Heritage’s notice requirements as set forth in the employee handbook. The employee handbook provided for exceptions to its notice requirement. However, the fact remains that no notice was provided from April 20 until the date of termination. There is no evidence that Cornelious attempted to notify Heritage once it became apparent that she had been fired, which should have shown her that any efforts by the hospice to give notice on her behalf had been fruitless. This is not giving notice as soon as practicable.
DECREE
The judgment is REVERSED. Costs are not assessed. La. R.S. 23:1692.

. The ALJ noted that the finding by the Louisiana Workforce Commission that Cornelious was disqualified under La. R.S. 23:1601(1) was reversed because that section did not apply.